# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

LARRY GAPEN,

                      Petitioner,           :    Case No. 3:08-cv-280

    - vs -                        District Judge Walter Herbert Rice
                                        Magistrate Judge Michael R. Merz

DAVID BOBBY, Warden,

                      Respondent.        :

---

## DECISION AND ORDER GRANTING IN PART AND DENYING IN PART PETITIONER'S FIRST MOTION FOR DISCOVERY

---

This capital habeas corpus case is before the Court on Petitioner's First Motion for Discovery (Doc. No. 51), Respondent's Opposition (Doc. No. 63), and Petitioner's Memorandum in Reply (Doc. No. 69).

Petitioner seeks the following discovery:

1.    Depositions of trial counsel David Greer and Bobby Joe Cox.

2.    All records of the Montgomery County Prosecutor's Office and the Montgomery Sheriff's Office relating to the homicides of Martha Madewell, Nathan Marshall, and Jesica Young.

3.    Depositions of direct appeal attorneys Robert Lowe, Stephen Ferrell, and Jane Perry.

4.    Depositions of all jurors and alternates.

5.    Records, statistics, and documents submitted pursuant to Ohio Revised Code § 2929.021 from all Ohio counties, both before and after Petitioner's prosecution.

The Warden opposes all discovery sought by Petitioner, but asserts that if certain discovery is

1

granted to Petitioner, the Warden should be permitted additional discovery. In addition, if depositions of the trial jurors are permitted, the Warden asks that they be done in open court to expedite rulings on expected objections.

## Analysis

A habeas petitioner is not entitled to discovery as a matter of course, but only upon a fact-specific showing of good cause and in the Court's exercise of discretion. Rule 6(a), Rules Governing §2254 Cases; *Bracy v. Gramley*, 520 U.S. 899 (1997); *Harris v. Nelson*, 394 U.S. 286 (1969); *Byrd v. Collins*, 209 F.3d 486, 515-16 (6th Cir. 2000). Before determining whether discovery is warranted, the Court must first identify the essential elements of the claim on which discovery is sought. *Bracy*, citing *United States v. Armstrong*, 517 U.S. 456 (1996). The burden of demonstrating the materiality of the information requested is on the moving party. *Stanford v. Parker*, 266 F.3d 442 (6th Cir. 2001), *citing Murphy v. Johnson,* 205 F. 3d 809, 813-15 (5th Cir. 2000). "Even in a death penalty case, 'bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring the state to respond to discovery or require an evidentiary hearing.'" *Bowling v. Parker*, 344 F.3d 487 (6th Cir. 2003)(*quoting Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001).

Rule 6 does not "sanction fishing expeditions based on a petitioner's conclusory allegations." *Williams v. Bagley,* 380 F.3d 932, 974, (6th Cir. 2004), *citing Rector v. Johnson*, 120 F.3d 551, 562 (5th Cir. 1997); *see also Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001). "Conclusory allegations are not enough to warrant discovery under [Rule 6]; the petitioner must set forth specific

allegations of fact." *Id., citing Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir. 1994).

Respondent opposes all discovery on the basis that this Court can determine from the state court record that the state courts' decisions on all relevant federal constitutional claims are not objectively unreasonable and are therefore entitled to complete deference under 28 U.S.C. § 2254(d)(Response, Doc. No. 63, PageID 1208-1210). No Supreme Court or Sixth Circuit precedent requires this Court to decide that question before determining whether discovery is appropriate. In denying Respondent's Motion to Allow for the Warden to Move for Judgment on the Pleadings, the Court indicated its preference to continue to adjudicate capital cases as it has done for the past ten years, to wit, by not splitting merits consideration into separate phases, but by considering the merits after all relevant discovery and any evidentiary hearing has occurred (Decision and Order, Doc. No. 61). The Court remains persuaded that this approach better carries out the purpose of Congress in adopting the AEDPA to expedite consideration of capital cases. On that basis, the Court declines to decide the § 2254(d) deference question before deciding whether discovery will be permitted. The same rationale applies to claims which Respondent asserts are procedurally defaulted.

Petitioner argues that Respondent is wrong to conflate the due diligence standard applicable to evidentiary hearings under 28 U.S.C. § 2254(e)(2) with the discovery standard. The Magistrate Judge disagrees. There is no point in gathering evidence through discovery that one cannot present to show one is entitled to habeas relief. To put the point in another way, how can a petitioner use discovered evidence to "demonstrate that he is entitled to relief" if he cannot present it to the habeas court for consideration?

Discovery in a habeas corpus case – indeed, in federal cases generally – is not a disembedded fact gathering process as if to satisfy someone's curiosity. Rather, it is fact gathering with a purpose

3

– presentation of facts in evidence in court. If those facts are of a sort that they cannot be presented

in court because one was not diligent in gathering them in the state court, then discovery does not

serve its lawful purpose and should not be authorized. *Brown v. Smith*, 551 F.3d 424 (6th Cir. 2008),

cited by Petitioner (PageID 1287) is not to the contrary: it does not discuss at all the standard for

discovery.    Therefore the Court will not allow discovery of facts to the extent Respondent

demonstrates that facts thus discovered would be inadmissible under *Keeney*.

## Ineffective Assistance of Trial Counsel Claims

Petitioner asserts a need for discovery related to the following claims of ineffective

assistance of trial counsel (Motion, Doc. No. 51, PageID 1061) :

**Tenth Ground for Relief:**

> Gapen was denied the effective assistance of counsel in the voir dire
> phase of his capital trial, thereby depriving him of his rights to due
> process and a fair and impartial jury in violation of the Fifth, Sixth,
> Eighth and Fourteenth Amendments to the United States Constitution
>
> A. Counsel Failed To Adequately Voir Dire And Strike – For Cause
> Or Otherwise – A Juror Who Was Biased And Unable To Render A
> Fair And Impartial Verdict
>
> B. Counsel Failed To Adequately Voir Dire and Strike A Prospective
> Juror Who Would Automatically Vote For a Sentence of Death

**Eleventh Ground for Relief:**

> Gapen was denied his Sixth Amendment right to effective assistance
> of counsel during his capital trial when his trial counsel failed to
> present evidence that Gapen did not act with prior calculation and
> design in the murder of Jesica Young.

**Twelfth Ground for Relief:**

> Gapen was denied the effective assistance of counsel during the penalty phase of his trial in violation of the Sixth, Eighth and Fourteenth Amendments to the United States Constitution
>
> A. Gapen was denied the effective assistance of counsel when his counsel failed to fully investigate and present mitigating evidence relevant to the overriding issues in his case
>
> B. Gapen's rights to effective assistance of counsel were violated when counsel failed to object to readmission of all trial phase evidence for the sentencing phase of his capital trial.
>
> C. Gapen's rights to effective assistance of counsel during the sentencing phase of his capital trial were violated when counsel failed to object to the trial court's erroneous instructions to the jury allowing the jury to determine what evidence was relevant for consideration and weighing during the death penalty calculus.

Petitioner seeks to depose his trial counsel regarding these claims. The essential elements of a claim of ineffective assistance of trial counsel are set forth in *Strickland v. Washington,* 466 U.S. 668 (1984), and are well known: deficient performance and resulting prejudice. Petitioner asserts without contradiction that he sought to be allowed to conduct discovery from his trial attorneys in state post-conviction. He has therefore shown good cause to take these depositions, but the depositions are to be limited in scope to questions relevant to these three claims. In other words, Petitioner's counsel may not depose Messrs. Greer and Cox generally "regarding their investigation and preparation for trial," but only about their performance as to the above three claims and any resulting prejudice.

Petitioner has failed to show any connection between these three claims and his desire to obtain all the records of the Montgomery County Prosecutor and Sheriff relating to the three homicides in suit. That requested discovery is denied.

## Ineffective Assistance of Appellate Counsel Claim

Petitioner seeks discovery in his claim of ineffective assistance of appellate counsel which

is:

**Eighteenth Ground for Relief:**

> Gapen was denied the effective assistance of appellate counsel on his sole appeal of right to the Supreme Court of Ohio and as such his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution were violated.

These claims are particularized in the Petition as follows:

> 337. Gapen was prejudiced because the claims appellate counsel failed to raise were strong claims, including a *Batson* claim, claims involving the jury's consideration of an invalid aggravator and the jury's consideration of improper evidence submitted to support the invalid aggravator, as well as strong ineffective assistance of counsel claims related to jury selection.

> 339. The claims that appellate counsel failed to raise are contained in the, Third, Tenth and Fifteenth Grounds for Relief detailed above and incorporated here by reference.

(Amended Petition, Doc. No. 31, PageID 388.)  The *Strickland* standard applies to ineffective

assistance of appellate counsel claims.  To determine why appellate counsel did not raise certain

claims which habeas counsel believes should have been raised, it is necessary or at least useful to

inquire into their reasoning process.  Petitioner asserts that he attempted to obtain discovery during

the *Murnahan* proceeding in state court, but was denied.  This is not surprising because it is this

Court's understanding that discovery is usually denied in those circumstances in Ohio.  Accordingly,

Petitioner has shown good cause to depose his direct appeal counsel.

### Juror Misconduct

Petitioner seeks to depose all sitting jurors and alternates on his assertion that they "engaged

in several instances of impermissible conduct." (Motion, Doc. No. 51, PageID 1062.) The relevant

Fourteenth Ground for Relief is as follows:

> Gapen was denied his constitutional rights during the trial and sentencing phases of his capital trial in violation of the Sixth, Eighth and Fourteenth Amendment [sic] of the United States Constitution when jurors engaged in impermissible misconduct.
>
> A. Gapen's rights to a fair trial and an impartial jury were denied when jurors considered external evidence, in the form of Biblical scripture and other religious materials, for assistance during guilt and penalty phase proceedings and deliberations.
>
> B. Gapen's right to a punishment determination based on discretion carefully guided by the law was denied when jurors considered external evidence, in the form of Biblical scripture and other religious materials, for assistance during guilt and sentencing phase proceedings and deliberations and impermissibly delegated ultimate responsibility for imposing Gapen's death sentence.
>
> C. Gapen's rights to a fair and individualized sentencing were denied when jurors failed to follow the trial court's instructions of law, and thus sentenced Gapen outside the constraints of a properly narrowed death penalty scheme.
>
> D. Gapen's rights to a fair and individualized sentencing were denied when jurors reached the decision to impose the death penalty at the conclusion of the trial phase of Gapen's case and thus refused to consider mitigating evidence offered during the sentencing phase.

(Amended Petition, Doc. No. 31, PageID 287-288.)

In setting the standard for discovery in *Bracy, supra*, the Supreme Court emphasized that

something beyond bare allegations was required to authorize discovery:

> We emphasize, though, that petitioner supports his discovery request

7

> by pointing not only to Maloney's conviction for bribe taking in other
> cases, but also to additional evidence, discussed above, that lends
> support to his claim that Maloney was actually biased in petitioner's
> own case.   That is, he presents "specific allegations" that his trial
> attorney, a former associate of Maloney's in a law practice that was
> familiar and comfortable with corruption, may have agreed to take
> this capital case to trial quickly so that petitioner's conviction would
> deflect any suspicion the rigged Rosario and Chow cases might
> attract.

*Id*. at 909.   The quoted "specific allegations" language is from *Harris v. Nelson, supra,* and

demonstrates that the Supreme Court in both cases was adverting not to the **claim** language in the

habeas petition, but to specific **evidence** obtained outside the discovery process and presented in

support of a motion for discovery, which corroborates the claimed constitutional violation.

Petitioner's Reply Memorandum on this claim is long on citations to cases with external

sources of influence on a jury and short on specific allegations.  Petitioner says "the scant record

evidence currently demonstrates that [Juror] Nedostup had a Bible or Biblical materials in the jury

room that he read and studied during breaks in the trial." (Reply, Doc. No. 50, PageID 914.) That

evidence is from an Affidavit of Dorian Hall, a mitigation specialist with the Ohio Public Defender's

Office who "was present during the conversation with Nedostup" conducted by post-conviction

counsel. *Id.* at 910.  Juror Nedostup refused to sign an affidavit himself confirming the accuracy

of his reported comments. *Id.*

A juror's reading the Bible during breaks in a trial is not juror misconduct just as a juror's

reading a John Grisham novel during breaks is not juror misconduct because it does not expose the

jury (as opposed to an individual juror) to any outside influence or extrinsic evidence.  Juror

Nedostup's having his Bible with him in the jury room, even if it was clearly visible to other jurors,

is also not juror misconduct.  There is no allegation that Juror Nedostup read to his fellow jurors

from the Bible during the trial or that any other juror examined his Bible in order to reach a decision

on the case.  There is insufficient evidence before this Court to warrant deposing the trial jurors.

Petitioner has not even asserted a theory of why the alternates should be deposed.

With respect to sub-claims C and D of the Fourteenth Ground for Relief, the Court declines

to authorize the depositions because none of the resulting evidence would be admissible under Fed.

R. Evid. 606.  A jury's interpretation and application of the court's instructions is a part of the

deliberative process and correctly excluded under Fed. R. Evid. 606(b).  *United States v. Tines*, 70

F.3d 891, 898 (6th Cir. 1995).  The same rule applies in a habeas case.  *Gulertekin v. Tinnelman-*

*Cooper*, 340 F.3d 415 (6th Cir. 2003).

In sum, the jurors and alternates may not be deposed.

## Proportionality

Petitioner's claim for relief on proportionality review is

**Twenty-first Ground for Relief:**

> Gapen's constitutional rights under the Fifth, Sixth, Eighth, and
> Fourteenth Amendments to the United States Constitution were
> violated when he was convicted and sentenced to death under Ohio's
> death penalty system which fails to provide an adequate system of
> appellate and proportionality review in death penalty cases including
> Gapen's.

(Amended Petition, Doc. No. 31, PageID 290.)  In brief, Petitioner's claim is that the Ohio Supreme

Court's decision in *State v. Steffen*, 31 Ohio St. 3d 111, 509 N.E.2d 383, 395 (1987),

unconstitutionally deprives Ohio death-sentenced appellants of a liberty interest in appropriate

proportionality review which was created by the Ohio General Assembly when Ohio's current death

penalty scheme was enacted. (Amended Petition, Doc. No. 31, PageID 394-395,  ¶¶ 367-370.)  To

that end, Petitioner seeks to discover records, statistics, and documents submitted pursuant to Ohio

Revised Code § 2929.021 from all Ohio counties, both before and after Petitioner's prosecution.

The documents in question are presumably in possession of the Clerk of the Ohio Supreme

Court, since that is the official with whom documents created under Ohio Revised Code § 2929.021

are to be deposited. This Court is aware that "[e]xceptions to the demand for every man's evidence

are not lightly created nor expansively construed."  *United States v. Nixon*, 418 U.S. 683

(1974)(Burger, Ch. J.).   Nevertheless, this Court would be very reluctant to issue process to the

Ohio Supreme Court in the absence of evidence that less intrusive means had been attempted to

obtain the relevant information.

Ohio has a very liberal public records law which the Ohio Supreme Court itself has broadly

construed.  Under Ohio Rev. Code §149.43, any record kept by a governmental unit must be made

available for inspection by the general public, unless specifically exempted or prohibited from

release by state or federal law.  The burden of proving the exemption is on the governmental unit.

*State, ex rel. Natl. Broadcasting Co. v. Cleveland,* 38 Ohio St. 3d 79, 526 N.E. 2d 786, ¶2 of the

syllabus (1988).  All doubts are to be resolved in favor of disclosure.  *Id*.;  *State, ex rel. Outlet*

*Communications, Inc. v. Lancaster Police Dept.,* 38 Ohio St. 3d 324, 528 N.E. 2d 175 (1988).  The

Act rests upon the "fundamental policy of promoting open government, not restricting it."  *The*

*Miami Student v. Miami Univ.*, 79 Ohio St. 3d 168, 171, 680 N.E. 2d 956 (1997); *State ex rel*

*Strothers v. Wertheim*, 80 Ohio St. 3d 155, 684 N.E. 2d 1239 (1997).  The Act is to be "liberally

construed in favor of broad access."  *State ex rel Wadd v. Cleveland*, 81 Ohio St. 3d 50, 51-52, 689

N.E. 2d 25 (1998).  The statutory definition of "record" includes "any material on which a public

office [could] or [did] rely." *State ex rel Mazzaro v. Ferguson,* 49 Ohio St. 3d 37, 550 N.E. 464 (1990). In the absence of a prior denied request for this information from the Ohio Supreme Court, this Court would be reluctant to permit a subpoena. See Fed. R. Civ. P. 26(b)(2)(C)(1).

Entirely apart from the federalism issues implicit in issuing a subpoena to a state supreme court, there is the question whether the resulting information could assist Petitioner in proving a claim on which he could obtain relief. There is no clearly established federal law decided by the United States Supreme Court requiring proportionality review of the sort argued for here. *Pulley v. Harris,* 465 U.S. 37 (1984)(proportionality review on appeal not required); *Zuern v. Tate*, 101 F. Supp. 2d 948 (S.D. Ohio 2000), *rev'd on other grounds*, 336 F.3d 478 (6th Cir. 2003). Accord, *Getsy v. Mitchell*, 495 F.3d 295, 310 (6th Cir. 2007)(en banc)*; Byrd v. Collins,* 209 F.3d 486 (6th Cir. 2000). This Court of course cannot consider whether the Ohio Supreme Court has correctly interpreted the proportionality requirements of the Ohio death penalty scheme. *Wilson v. Corcoran,* 562 U.S. ___, 131 S. Ct. 13, 178 L. Ed. 2d 276 (2010). And no federal court has held that the Ohio death penalty scheme creates a federally-protected liberty interest in the proportionality review for which Petitioner argues.

Because the evidence sought is not material to a claim on which habeas corpus relief can be granted, Petitioner's motion for discovery of records kept under Ohio Revised Code § 2929.021 is denied.

**Conclusion**

Petitioner's Motion for Discovery is granted in part and denied in part as set forth above.

All discovery permitted by this Order shall be completed not later than April 30, 2011.

December 23, 2010.

s/ **Michael R. Merz**
United States Magistrate Judge