IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


LARRY GAPEN,                          :

          Petitioner,                 :
                                            Case No. 3:08-cv-280
          vs.                         :
                                            JUDGE WALTER HERBERT RICE
DAVID BOBBY, WARDEN,                  :

          Respondent                  :

---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN
PART PETITIONER LARRY GAPEN'S OBJECTIONS TO THE
MAGISTRATE JUDGE'S DECISION AND ORDER DENYING IN PART
PETITIONER'S FIRST MOTION FOR DISCOVERY (DOC. #74); GIVING
PETITIONER 90 DAYS TO DEPOSE JURORS AND ALTERNATE JURORS
ON SUBCLAIMS (A) AND (B) OF FOURTEENTH GROUND FOR RELIEF

---

I.    **Procedural History**

        On October 8, 2010, Petitioner filed his First Motion for Discovery.  Doc. #51.

On December 23, 2010, the United States Magistrate Judge issued a Decision and

Order granting in part and denying in part Petitioner's motion.  Doc. #71.

        Under Rule 6(a) of the Rules Governing Section 2254 Cases, habeas petitioners

are entitled to discovery only upon a showing of "good cause."  The Magistrate

Judge found good cause to grant Petitioner leave to depose his trial attorneys and

appellate attorneys in connection with some of Petitioner's claims of ineffective

assistance of counsel.  However, he denied Petitioner's requests: (1) to depose jurors

and alternate jurors regarding alleged juror misconduct; (2) for the production of

certain Montgomery County records related to Petitioner's homicide charges; and (3)

for the production of capital crime records submitted to the Ohio Supreme Court

pursuant to Ohio Revised Code § 2929.021.[1]

Petitioner filed Objections to the Decision and Order on January 18, 2011.

Doc. #74.  The Warden's Response, Doc. #76, was filed on January 20, 2011.  On

January 24, 2011, the United States Magistrate Judge issued a Supplemental

Memorandum on Petitioner's First Motion for Discovery, recommending that the

Court overrule Petitioner's Objections.  Doc. #77.

The Magistrate Judge subsequently modified the December 23, 2010, Decision

and Order, after the Supreme Court rendered a decision in *Cullen v. Pinholster*, 131

S.Ct. 1388 (2011).  In *Cullen*, the Court held that for all claims adjudicated on the

merits in state court, a federal court reviewing a habeas petition under 28 U.S.C.

§ 2254(d)(1) may consider *only* the record that was before the state court.  It cannot

consider any new evidence in determining whether the state court's adjudication

resulted in a decision that was contrary to, or involved an unreasonable application

of, clearly established Federal law.  Based on *Cullen*, Respondent filed a Motion for

Reconsideration of the December 23, 2010, Decision and Order.  Doc. # 85.  The

---

[1]    Ohio Revised Code § 2929.021 establishes a procedure whereby the Ohio Supreme Court collects information about cases involving charges of aggravated murder with specifications of aggravating circumstances.

2

Magistrate Judge granted that motion, further limiting the scope of deposition testimony of Petitioner's attorneys, and withdrawing permission to depose counsel on the claims that had been adjudicated on the merits in state court.  Doc. #91.

## II.    Standard of Review

The discovery order at issue involves a non-dispositive matter.  The appropriate standard of review is therefore set forth in Federal Rule of Civil Procedure 72(a), which states that "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." *See also* 28 U.S.C. § 636(b)(1)(A).

The "clearly erroneous" standard applies to factual findings and requires the district court to affirm the magistrate judge's decision unless, on the entire evidence, the district court "is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948).  To establish that a magistrate judge's opinion is "contrary to law," an aggrieved party must demonstrate that the legal conclusions "contradict or ignore applicable precepts of law, as found in the Constitution, statutes, or case precedent." *Gandee v. Glaser*, 785 F.Supp. 684, 686 (S.D.Ohio 1992) (quoting *Adolph Coors Co. v. Wallace*, 570 F.Supp. 202, 205 (N.D. Cal. 1983)).

## III.   Analysis

Petitioner objects to the Magistrate Judge's Decision and Order denying his requests: (A) to depose jurors and alternate jurors about the alleged juror

3

misconduct; (B) for production of files maintained by the Montgomery County

Prosecutor's Office and Montgomery County Sheriff's Office relating to the

homicides of Martha Madewell, Nathan Marshall, and Jesica Young; and (C) for

production of all records, statistics, and documents submitted in accordance with

Ohio Revised Code § 2929.021 for all indicted capital cases from all counties in

Ohio.  In addition, Petitioner objects to the Magistrate Judge's conclusion that the

"due diligence" standard set forth in 28 U.S.C. § 2254(e)(2) applies to motions for

discovery.  For the reasons set forth below, Petitioner's Objections are sustained in

part and overruled in part.

### A.    Depositions of Jurors and Alternate Jurors

In his Fourteenth Ground for Relief, Petitioner alleges as follows:

**Gapen Was Denied His Constitutional Rights During the Trial and Sentencing Phases of His Capital Trial in Violation of the Sixth, Eighth and Fourteenth Amendment of the United States Constitution When Jurors Engaged in Impermissible Misconduct.**

    A.    Gapen's rights to a fair trial and an impartial jury were denied when jurors considered external evidence, in the form of Biblical scripture and other religious materials, for assistance during guilt and penalty phase proceedings and deliberations.

    B.    Gapen's right to a punishment determination based on discretion carefully guided by the law was denied when jurors considered external evidence, in the form of Biblical scripture and other religious materials, for assistance during guilt and sentencing phase proceedings and deliberations and impermissibly delegated ultimate responsibility for imposing Gapen's death sentence.

4

C.    Gapen's rights to a fair and individualized sentencing were denied when jurors failed to follow the trial court's instructions of law, and thus sentenced Gapen outside the constraints of a properly narrowed death penalty scheme.

D.    Gapen's rights to a fair and individualized sentencing were denied when jurors reached the decision to impose the death penalty at the conclusion of the trial phase of Gapen's case and thus refused to consider mitigating evidence offered during the sentencing phase.

Am. Petition, Doc. #31, at 86-95. In order to help develop the facts to support these allegations, Petitioner sought to depose all members of his jury, including the alternate jurors.

The Magistrate Judge denied Petitioner's request. With respect to subclaims (A) and (B), he found that Petitioner's allegations of juror misconduct were not specific enough to justify the requested discovery. Doc. #71, at 7-9. Citing page 303 of the Traverse, Doc. #50, he noted that Petitioner alleged that Mr. Nedostup, one of the jurors, "had a Bible or Biblical materials in the jury room that he read and studied during breaks in the trial." The Magistrate Judge found that even if this were true, it did not expose the jury as a whole to any improper external influence. With respect to subclaims (C) and (D), he denied the requested discovery because evidence of a jury's interpretation and application of the court's instructions is part of the deliberative process and, therefore, inadmissible under Federal Rule of Civil Procedure 606(b). Doc. #71, at 9.

5

Petitioner objects to the Magistrate Judge's decision, arguing that the Magistrate Judge erred by: (A) construing the nature and scope of Petitioner's claims too narrowly; (B) failing to consider crucial allegations of juror misconduct; and (C) misapplying relevant law regarding external evidence and extra-judicial source of law claims, evidentiary standards, and related habeas discovery rules. Doc. #74, at 3-11.

### 1. Subclaims (A) and (B)

Petitioner argues that the Magistrate Judge erred in focusing solely on allegations concerning the presence of the Bible in the jury room.  The Magistrate Judge ignored additional allegations, set forth in the Traverse, that Juror Nedostup conducted other outside research on death penalty law, read other religious texts, and discussed his research with other jurors before and/or during deliberations. Petitioner also argues that the Magistrate Judge failed to consider two affidavits of Assistant Ohio Public Defender Kathy Sandford, who was present during interviews with some of the jurors following the trial.  According to Sandford, two of the jurors admitted that Nedostup researched what the Bible had to say about the death penalty and shared his research with them.

Petitioner's Objections with respect to subclaims (A) and (B) are SUSTAINED.  The Magistrate Judge clearly erred in failing to consider the full scope of Petitioner's allegations of juror misconduct.  The Magistrate Judge correctly noted that, up until the time the Objections were filed, Petitioner was not

6

very helpful in directing the Court to that portion of the record that contained the specific allegations of juror misconduct that formed the basis for the discovery request.  Doc. #77, at 5.

Nevertheless, it is obvious that the Magistrate Judge reviewed the Traverse in ruling on the discovery motion.  In fact, he cited that portion of the Traverse in which Petitioner alleged that "Nedostup had a Bible or Biblical materials in the jury room that he read and studied during breaks in the trial."  Doc. #71, at 8.  In the Decision and Order, the Magistrate Judge stated that, "[t]here is no allegation that Juror Nedostup read to his fellow jurors from the Bible during the trial or that any other juror examined his Bible in order to reach a decision on the case."  Doc. #71, at 8-9.  Technically, this is true.  The Magistrate Judge, however, completely ignored the allegations found in the very same paragraph of the Traverse that "[t]he current record also demonstrates that Nedostup discussed his views and his research with other jurors, and that he conducted still more independent research into the death penalty and the law."  Traverse, Doc. #50, at 303-04.  In fairness to Petitioner, the Court must consider the full range of the allegations of juror misconduct.

If these additional allegations are true, and if Nedostup's research and references to the Bible influenced the jury's decision to impose the death penalty, Petitioner may be able to establish a constitutional violation.  The Sixth Amendment guarantees that convictions will be based only on evidence presented

7

in the courtroom with the full judicial protection of the defendant's right of confrontation, cross-examination, and right to counsel. *Parker v. Gladden*, 385 U.S. 363, 364-65 (1966). A jury cannot be exposed to external influences during deliberations.

Many courts have either held or implied that a jury's consultation of the Bible during the sentencing phase of a death penalty trial constitutes an improper external influence and is presumptively prejudicial. *See Oliver v. Quarterman*, 541 F.3d 329, 340 (5th Cir. 2008) ("the jury's consultation of the Bible passages in question during the sentencing phase of the trial amounted to an external influence on the jury's deliberations."); *McNair v. Campbell*, 416 F.3d 1291, 1308 (11th Cir. 2005) (prejudice was presumed where juror brought Bible into jury room during deliberations, read aloud from it, and led the other jurors in prayer); *Coe v. Bell*, 161 F.3d 320, 351 (6th Cir. 1998) (implying, in dicta, that the presence of a Bible, which had not been admitted into evidence, in the jury room, could be problematic); *United States v. Lara-Ramirez*, 519 F.3d 76, 88-89 (1st Cir. 2008) (in evaluating district court's declaration of a mistrial after discovering a Bible in the jury room during deliberations, appellate court found that, in considering whether the jury was tainted by external evidence, "no special rule exists when the Bible is involved."). *But see Robinson v. Polk*, 438 F.3d 350 (4th Cir. 2006) (holding that a jury's consultation of the Bible was akin to quoting the Bible from memory and did not constitute an external influence).

It is true that, at the present time, Petitioner has no admissible evidence to support his allegations. Nedostup and the two other jurors have refused to sign affidavits attesting to what happened. The jurors' statements, as recounted in the affidavits of Petitioner's attorneys, constitute inadmissible hearsay. Nevertheless, in the Court's view, those affidavits are sufficient to establish "good cause" to allow Petitioner to depose the jurors and the alternate jurors on this subject.[2] As the Supreme Court has held, "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997) (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)). The Court therefore grants leave for Petitioner to depose the jurors and alternate jurors concerning Nedostup's outside research into the death penalty and his discussion of that research with his fellow jurors.

### 2.    Subclaims (C) and (D)

Petitioner argues that the Magistrate Judge erroneously applied relevant law concerning external evidence, and misapplied relevant evidentiary standards with respect to subclaims (C) and (D). In the Amended Petition, Petitioner alleges that the jurors failed to follow the court's instructions. He maintains that some jurors

---

[2] Although the alternate jurors did not participate in deliberations, they nevertheless may have personal knowledge of Nedostup's research into the death penalty and his discussions with the other jurors up to that point.

9

made up their minds to impose the death penalty prior to the sentencing phase of the trial. He further alleges that some jurors improperly considered non-statutory aggravating factors, and failed to consider certain mitigating evidence. Doc. #31, at 91-95.

The Magistrate Judge refused to allow discovery on these subclaims because "none of the resulting evidence would be admissible under Fed. R. Evid. 606." Doc. #71, at 9. Rule 606(b) states:

> (b) *Inquiry into validity of verdict or indictment.* Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. But a juror may testify about (1) whether extraneous prejudicial information was improperly brought to the jury's attention, (2) whether any outside influence was improperly brought to bear upon any juror, or (3) whether there was a mistake in entering the verdict onto the verdict form. A juror's affidavit or evidence of any statement by the juror may not be received on a matter about which the juror would be precluded from testifying.

Fed. R. Evid. 606(b).

Petitioner argues that because some of the requested discovery relates to what may have happened prior to formal deliberations, it falls outside of Rule 606(b)'s prohibitions. He maintains that he "is not seeking the subjective deliberative thoughts of the jurors," but instead seeks to determine *when* certain decisions were made and whether Nedostup was "categorically unable to consider any mitigation evidence . . . based on his religious convictions or his impermissible

external research."[3] Doc. #74, at 10. Finally, Petitioner argues that, in any event, the question, at this point in the litigation, is not whether the evidence would be admissible under Rule 606(b), but rather whether the discovery sought might lead to relevant evidence. *Payne v. Bell*, 89 F.Supp. 2d 967, 970 (W.D. Tenn. 2000).

In the Supplemental Memorandum, the Magistrate Judge questioned how it is possible for Petitioner to determine *when* certain decisions were made or whether Nedostup's religious beliefs rendered him incapable of considering mitigating evidence, without inquiring into the deliberative process, a result prohibited by Federal Rule of Evidence 606(b). The Magistrate Judge also rejected Petitioner's claim that admissibility of the evidence is irrelevant in deciding whether discovery should be allowed. Likewise, he denied that potential relevance was the only factor to be considered in determining whether "good cause" exists for allowing discovery; rather, the policies behind Rule 606(b) -- preserving the finality of jury decisions and protecting jurors from harassment -- must also be taken into consideration. Doc. #77, at 11-14.

In the Court's view, the Magistrate Judge's decision with respect to subclaims (C) and (D) is neither clearly erroneous nor contrary to law. The allegations of juror misconduct that form the basis for these subclaims focus on

---

[3] Petitioner also argues that, to the extent he seeks to determine whether external prejudicial information was brought to the jury's attention, the requested discovery falls within the first exception set forth in Rule 606(b). The Court agrees, but believes that this claim is subsumed in subclaims (A) and (B).

*when* the decision to impose the death penalty was made, and whether the jurors properly considered certain aggravating and mitigating factors.  The Court agrees with the Magistrate Judge that it would be impossible to depose the jurors on these topics without delving into the deliberative process.  The Court therefore OVERRULES Petitioner's Objections with respect to the Magistrate Judge's decision to deny the requested discovery in connection with subclaims (C) and (D).

### B. Montgomery County Homicide Records

In connection with his ineffective assistance of trial counsel claims, set forth in the Tenth, Eleventh, and Twelfth Grounds for Relief, Petitioner sought discovery of "all records" of the Montgomery County Prosecutor's Office and Montgomery County Sheriff's Office related to the three homicides for which he was convicted and sentenced to death.

The Magistrate Judge denied the request, concluding that it was overbroad, and that Petitioner had failed to show any connection between the ineffective assistance of counsel claims and the need for these records.  Doc. #71, at 5.  In his Objections, Petitioner explains, for the first time, that he believes that the requested records might contain documentation of his strange behavior around the time he was arrested on an earlier kidnaping charge, and this would be relevant to his claim that his trial attorneys failed to investigate, develop, and present available mitigation evidence.  Doc. #74, at 12-13.

12

Given that Petitioner had failed to provide *any* rational basis for the requested discovery before the Magistrate Judge issued his decision, the Court concludes that the Magistrate Judge's decision was neither clearly erroneous nor contrary to law.  Moreover, as the Magistrate Judge noted in the Supplemental Memorandum, it is not clear that the homicide records would contain any information about the previous kidnaping charge.  For these reasons, the Court OVERRULES Petitioner's Objections concerning production of the Montgomery County Records.

### C.    O.R.C. § 2929.021 Records

In his Twenty-First Ground for Relief, Petitioner argues that Ohio's death penalty scheme lacks "an adequate system of appellate and proportionality review."  In his First Motion for Discovery, he seeks "Records, statistics and documents submitted pursuant to and in compliance with O.R.C. § 2929.021 for all capitally indicted cases from all counties in Ohio before and after the time of Larry Gapen's prosecution."  Doc. #51, at 3.

The Magistrate Judge denied Petitioner's request.  Citing "the federalism issues implicit in issuing a subpoena to a state supreme court," he noted that the same information was likely to be available through a public records request.  In addition, citing *Pulley v. Harris*, 465 U.S. 37 (1984), the Magistrate Judge seriously questioned whether Petitioner had a colorable habeas claim.  In *Pulley*, the Supreme Court held that there was no "constitutional requirement of

13

proportionality review." *Id.* at 48. The Magistrate Judge therefore denied Petitioner's request "[b]ecause the evidence sought is not material to a claim on which habeas corpus relief can be granted." Doc. #71, at 10-11.

Petitioner argues that the Magistrate Judge failed to address his argument that because the claim was not adjudicated on the merits, the limitations of § 2254(d)(1) do not apply.[4] However, as the Magistrate Judge discussed in the Supplemental Memorandum, although the state courts' treatment of this claim was very brief, the claim was, in fact, adjudicated on the merits. Doc. #77, at 16-18. In *Harrington v. Richter*, 131 S.Ct. 770, 784–85 (2011), the Supreme Court held that "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."

Because the claim was adjudicated on the merits, under § 2254(d)(1), Petitioner must show that the state court's decision was contrary to, or an unreasonable application of, clearly established federal law. In light of *Pulley*, the Court finds that the Magistrate Judge properly denied Petitioner's discovery

---

[4] Petitioner also argues that the Magistrate Judge construed his claim too narrowly, neglecting his allegation, as set forth in the Traverse, that the death sentence violates the Eighth Amendment because it is arbitrary and capricious, and that appellate review failed to prevent such a sentence. Doc. # 74, at 14. As the Magistrate Judge pointed out, however, these factual allegations are not included in the Amended Petition or mentioned in the Motion for Discovery. Doc. #77, at 15.

request for the Ohio Supreme Court records. For these reasons, the Court OVERRULES Petitioner's Objections to the Magistrate Judge's decision denying the requested discovery in connection with this claim.

### D.     Application of 28 U.S.C. § 2254(e)(2) to Discovery Motions

Petitioner also objects to the Magistrate Judge's general application of the due diligence standard set forth in 28 U.S.C. § 2254(e)(2)(A)(ii) to motions for discovery. That subsection of the statute prohibits a federal court from holding an evidentiary hearing unless the petitioner exercised due diligence in developing the factual basis for the claim in state court proceedings. The "due diligence" standard has also been applied to restrict a petitioner's attempt to expand the record pursuant to Rule 7 of the Rules Governing Section 2254 Cases. *Holland v. Jackson*, 542 U.S. 649, 653 (2004).

As noted earlier, Rule 6 of the Rules Governing Section 2254 Cases, provides that a district court may allow discovery "for good cause." In the Decision and Order, the Magistrate Judge rejected Petitioner's argument that it is wrong to conflate this "good cause" standard with the "due diligence" standard. The Magistrate Judge stated, "[t]here is no point in gathering evidence through discovery that one cannot present" to the habeas court for consideration. "If those facts are of a sort that they cannot be presented in court because one was not diligent in gathering them in the state court, then discovery does not serve its lawful purpose and should not be authorized." Doc. #71, at 3-4.

15

Petitioner argues that, even though the Sixth Circuit has not yet addressed this issue, the Magistrate Judge's application of the "due diligence" standard to the "good cause" standard is contrary to law. In support, Petitioner cites to *Hill v. Anderson*, No. 4:96-cv-795, 2010 U.S. Dist. LEXIS 132468, at **21-23 (N.D. Ohio Dec. 14, 2010), *Johnson v. Bobby*, No. 2:08-cv-55, 2010 U.S. Dist. LEXIS 103351, at **8-12 (S.D. Ohio Sept. 30, 2010), and *Simmons v. Simpson*, No. 3:07-cv-313, 2009 U.S. Dist. LEXIS 122388, at *13 (W.D. Ky. Feb. 11, 2009). In each case, the court held that the question of whether good cause exists to allow discovery is distinct from the question of whether a Petitioner should later be precluded, based on a failure to exercise due diligence, from introducing new evidence in support of his habeas claims.

In *Johnson*, Magistrate Judge Kemp also noted that the "due diligence" standard would not seem to apply when petitioners seek to present new evidence for purposes other than demonstrating that they are entitled to relief on their constitutional claims, such as attempting to establish cause and prejudice for a procedural default. *See also Cowans v. Bagley*, No. C1-00-618, 2002 WL 31370475, at *4 (S.D. Ohio Sept. 30, 2002) (citing *Payne v. Bell*, 89 F.Supp. 2d 967, 970 (W.D. Tenn. 2000), and noting that conflating the standards would prevent petitioners from obtaining discovery that could be used for other purposes); *Braden v. Bagley*, No. 2:04-cv-842, 2007 WL 1026454, at *6 (S.D. Ohio Mar. 30, 2007) (noting that the due diligence standard would not apply when a petitioner

16

seeks to expand the record to attempt to satisfy the cause and prejudice exception to procedural default).

In his Supplemental Memorandum, the Magistrate Judge acknowledged that other courts within the Sixth Circuit had views contrary to his own. However, he believes that Rule 6 must be interpreted to carry out its purpose, which is to allow a petitioner to gather evidence which will be presented to the court in deciding the merits of the claims. According to the Magistrate Judge, if the evidence sought to be discovered can never be presented to the Court, there exists no "good cause" for allowing that discovery. He noted that he has consistently applied this reasoning to discovery in habeas cases, including capital cases, for at least ten years. Doc. #77, at 19-25.

The Magistrate Judge's viewpoint is clearly against the greater weight of authority within the Sixth Circuit. However, he is not completely alone in his beliefs. *See Moen v. Czerniak*, No. Civ.02-10-JE, 2004 WL 1293920, at *1 (D. Or. June 10, 2004) ("Discovery under Rule 6 must be considered in light of the provisions of 28 U.S.C. § 2254(e)(2) which limit the scope of federal habeas corpus review to the state court record except [in] certain specified circumstances . . . "); *Stallings v. Bagley*, No. 505-cv-722, 2007 WL 437888, at *2 (N.D. Ohio Feb. 6, 2007 (prohibiting a discovery request that appeared to be made in an attempt to circumvent the "due diligence" restrictions of Rule 7 as interpreted by *Holland v. Jackson*).

17

Because the Sixth Circuit has not yet decided this issue and there is no controlling authority, the undersigned judge cannot say that the Magistrate Judge's application of the § 2254(e)(2) standard to discovery motions is "contrary to law." This is particularly so under the circumstances presented here, where Petitioner is not seeking discovery to establish cause and prejudice for a procedural default. Rather, Petitioner seeks evidence to support of the merits of his constitutional claims, evidence which, for a variety of reasons, does not appear to be admissible. Petitioner's Objections on this issue are therefore OVERRULED.

## IV.    Conclusion

For the reasons stated above, the Court SUSTAINS IN PART and OVERRULES IN PART Petitioner's Objections (Doc. #74) to the Magistrate Judge's December 23, 2010, Decision and Order.

The Court OVERRULES the Objections to that portion of the Decision and Order denying Petitioner's requests: (1) to depose the jurors and alternate jurors in connection with subclaims (C) and (D) of the Fourteenth Ground for Relief; (2) for the production of all records of the Montgomery County Prosecutor's Office and Montgomery County Sheriff's Office related to the homicide charges; and (3) for the production of capital crime records submitted to the Ohio Supreme Court pursuant to Ohio Revised Code § 2929.021.

The Court, however, SUSTAINS Petitioner's Objections to that portion of the Magistrate Judge's Decision and Order denying Petitioner's request to depose the

18

jurors and alternate jurors in connection with subclaims (A) and (B) of the

Fourteenth Ground for Relief.  Petitioner shall have 90 days from the date of this

Order to complete those depositions.


Date:  October 31, 2011

WALTER HERBERT RICE
UNITED STATES DISTRICT JUDGE


Copies to: Counsel of Record

19