# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

LARRY GAPEN,

                Petitioner,            :    Case No. 3:08-cv-280

   - vs -

                                    District Judge Walter Herbert Rice
                                    Magistrate Judge Michael R. Merz

DAVID BOBBY, Warden,

                Respondent.          :

---

# REPORT AND RECOMMENDATIONS ON WARDEN'S MOTION TO DISMISS THE TWENTY-FOURTH AND TWENTY-FIFTH CLAIMS FOR RELIEF

---

This case is before the Court on the Warden's Motion to Dismiss the Twenty-Fourth and Twenty-Fifth Grounds for Relief (Doc. No. 141). Petitioner opposes the Motion (Doc. No. 152), the Warden has filed a reply in support (Doc. No. 158), and the Magistrate Judge heard oral argument on August 10, 2012. The argument has now been transcribed (Doc. No. 164).

Although no relevant rule is cited by the Warden, the Motion is presumably made under Fed. R. Civ. P. 12(b)(6). Such motions are classified as dispositive under 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72, requiring a recommended disposition from a referral Magistrate Judge.

The Twenty-Fourth and Twenty-Fifth Grounds for Relief, first pled March 8, 2012, in Gapen's Second Amended Petition (Doc. No. 124) , are as follows:

> **Twenty-Fourth Ground for Relief:** GAPEN'S EXECUTION
> WILL VIOLATE THE EIGHTH AMENDMENT BECAUSE
> OHIO'S LETHAL INJECTION PROTOCOL WILL RESULT IN

CRUEL AND UNUSUAL PUNISHMENT

> **Twenty-Fifth Ground for Relief:** GAPEN'S EXECUTION
> WILL VIOLATE THE FOURTEENTH AMENDMENT
> BECAUSE OHIO'S LETHAL INJECTION PROTOCOL WILL
> DEPRIVE HIM OF EQUAL PROTECTION UNDER THE LAW

(Second Amended Petition, Doc. No. 124, PageID 3174-3178.)  Petitioner's Twentieth Ground

for Relief also involves lethal injection issues; it reads:

> **Twentieth Ground for Relief:** THE PRACTICE OF EXECUTION
> BY LETHAL INJECTION VIOLATES GAPEN'S RIGHT TO BE
> FREE FROM CRUEL AND UNUSUAL PUNISHMENT UNDER
> THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE
> UNITED STATES CONSTITUTION.

*Id*. at PageID 3166-3167.   This same Twentieth Ground for relief was pled in the original

Petition (Doc. No. 17, PageID 206-207).  These three claims are referred to herein collectively as

the "Lethal Injection Claims."  The Warden's instant Motion is directed only to Grounds 24 and

25.

## 1. Gapen's Lethal Injection Claims Are Cognizable in Habeas Corpus Because, if Successful, They Would Preclude His Execution.

The Warden asserts that Gapen's Lethal Injection Claims fail to state a claim upon which

relief can be granted because, if he prevailed on his claims, it would not render his conviction or

sentence invalid.

The Warden notes that Gapen is a plaintiff in *In re: Ohio Execution Protocol Litigation*,

Case No. 2:11-cv-1106, pending before Judge Frost, and states "Gapen sets forth nothing to

distinguish the claims he makes in his simultaneous civil suit." The Warden believes Gapen has

conceded that the State can lawfully execute him by lethal injection:

> In his simultaneous civil suit, Gapen concedes that Ohio can carry
> out his sentence in a manner consistent with the Constitution.
> Indeed, Gapen demands that the State be ordered to do so.
> "Plaintiff also seeks, among other relief, preliminary and
> permanent mandatory injunctions under federal law ordering
> Defendants to adopt, and adhere in their administration to, a
> facially constitutional written execution protocol in efforts to
> execute him."

(Motion, Doc. No. 141, PageID 3882.)

In response, Gapen states

> [S]eeking an injunction ordering the State to adopt a facially
> constitutional execution policy is certainly not conceding that Ohio
> can constitutionally carry out lethal injection executions. And
> asking the court to order the State to follow its own laws in
> executing its citizens does not in any way concede that the State
> can actually do that.

(Memo in Opp., Doc. No. 152, PageID 4339.) The Magistrate Judge had understood that, at the

outset of the injection protocol case, plaintiffs had conceded to Judge Frost that the injunctive

relief they sought was possible to grant. Be that as it may, Gapen now denies any such

concession and makes it clear he seeks, in this habeas case, a writ which would prohibit

altogether his execution by lethal injection. He reiterated that position several times in several

different ways at oral argument (Transcript, Doc. No. 164, PageID 4478-4489.)[1] That position

brings Gapen's Lethal Injection Claims squarely within the holding of *Adams v. Bradshaw*, 644

F.3d 481 (6th Cir. 2011):

---

[1] At that point in the oral argument , Gapen's counsel claimed that the same claims could proceed **simultaneously** in
1983 and habeas, relying on *Terrell v. United States*, 564 F.3d 442 (6th Cir. 2009). *Terrell* does not stand for that
proposition.

> The Warden's contention that *Hill [v. McDonough]* "holds that a challenge to the particular means by which a lethal injection is to be carried out is non-cognizable in habeas" is too broad. Nowhere in *Hill* or *Nelson* does the Supreme Court state that a method-of-execution challenge is not cognizable in habeas or that a federal court "lacks jurisdiction" to adjudicate such a claim in a habeas action. Whereas it is true that certain claims that can be raised in a federal habeas petition cannot be raised in a § 1983 action, see *Preiser*, 411 U.S. at 500, it does not necessarily follow that any claim that can be raised in a § 1983 action cannot be raised in a habeas petition, see *Terrell v. United States*, 564 F.3d 442, 446 n.8 (6th Cir. 2009). Moreover, *Hill* can be distinguished from this case on the basis that Adams has not conceded the existence of an acceptable alternative procedure. See 547 U.S. at 580. Thus, Adams's lethal-injection claim, if successful, could render his death sentence effectively invalid. Further, *Nelson's* statement that "method-of-execution challenges fall at the margins of habeas," 541 U.S. at 646, strongly suggests that claims such as Adams's can be brought in habeas.

*Id*. at 483.

The Warden argues that success on these claims would not preclude Gapen's execution because Ohio Revised Code § 2949.22 requires an alternate means of execution be used if lethal injection is declared unconstitutional (Motion, Doc. No. 141, PageID 3882). That statute provides in pertinent part:

> (A) Except as provided in division (C) of this section, a death sentence shall be executed by causing the application to the person, upon whom the sentence was imposed, of a lethal injection of a drug or combination of drugs of sufficient dosage to quickly and painlessly cause death. The application of the drug or combination of drugs shall be continued until the person is dead. The warden of the correctional institution in which the sentence is to be executed or another person selected by the director of rehabilitation and correction shall ensure that the death sentence is executed.

> (C) If a person is sentenced to death, and if the execution of a death sentence by lethal injection has been determined to be unconstitutional, the death sentence shall be executed by using any different manner of execution prescribed by law subsequent to the

> effective date of this amendment instead of by causing the application to the person of a lethal injection of a drug or combination of drugs of sufficient dosage to quickly and painlessly cause death, provided that the subsequently prescribed different manner of execution has not been determined to be unconstitutional. The use of the subsequently prescribed different manner of execution shall be continued until the person is dead. The warden of the state correctional institution in which the sentence is to be executed or another person selected by the director of rehabilitation and correction shall ensure that the sentence of death is executed.

Ohio Revised Code § 2949.22. As Petitioner points out in reply, no "different manner" of execution has been "prescribed by law" as yet. (Memo in Opp., Doc. No. 152, PageID 4350-4352.) Nor indeed has lethal injection as a method of execution been "determined to be unconstitutional." If it were, it is unclear to this Court that this would render Gapen's death sentence unconstitutional. Rather, it seems, this would require adoption of a new method "prescribed by law" and Gapen could not be executed until that new method was in place. The Court agrees with the Warden that this makes the Lethal Injection Claims sound more like § 1983 conditions of confinement claims, but *Adams v. Bradshaw* is controlling Circuit precedent.

In *Nelson v. Campbell*, 541 U.S. 637 (2004), and *Hill v. McDonough*, 547 U.S. 573 (2006), the Supreme Court held that method of execution claims were cognizable in § 1983. As the Sixth Circuit held in *Adams*, that does not mean such claims are exclusively cognizable in § 1983.

The Warden's first argument for dismissal is precluded by *Adams, supra.*

### 2. Gapen's Equal Protection Claim

The Warden argues that the Twenty-Fifth Ground, the equal protection claim, could have been raised on direct appeal or, to the extent it depends on evidence *dehors* the record, could have been brought as part of Gapen's petition for post-conviction relief under Ohio Revised Code § 2953.21. The Warden notes that on direct appeal "Gapen claimed that Ohio's use of lethal injection as the State's statutorily required method of execution constituted cruel and unusual punishment in violation of the Eighth Amendment." The Warden argues this shows that the Fourteenth Amendment equal protection claim now made in Ground Twenty-Five could have been made previously and is therefore both procedurally defaulted and barred by the statute of limitations. (Motion, Doc. No. 141, PageID 3887-3888.)

Gapen's response is based entirely on *Scott v. Houk*, 127 Ohio St. 3d 317 (2010). In that case, the Ohio Supreme Court accepted the following certified question from Judge Adams of the Northern District of Ohio: "Is there a post-conviction or other forum to litigate the issue of whether Ohio's lethal injection protocol is constitutional under *Baze v. Reese*, 553 U.S. 35, 128 S. Ct. 1520, 170 L. Ed. 2d 420 (2008), or under Ohio law?" The Ohio Supreme Court responded:

> There are several established methods for an Ohio death-penalty defendant to receive state review of his or her case. These methods, created by the legislature, are clear in their application to death-penalty defendants. See Section 2(B)(2)(c), Article IV, Ohio Constitution (direct appeal of death-penalty case to this court); R.C. 2953.21 (postconviction-relief procedure for persons convicted of crimes, including those sentenced to death); and R.C. 2725.01 (state habeas corpus petition). Additionally, we allow a death-penalty defendant to file an application to reopen his or her appeal in the courts of appeals and in this court under App.R. 26(B). See, e.g., *State v. Ketterer*, 113 Ohio St.3d 1463, 2007-Ohio-1722, 864 N.E.2d 650.

We have held that these opportunities for review more than satisfy defendants' "constitutional rights to due process and fair trials" while also protecting Ohio's "inherent power to impose finality on its judgments." *State v. Steffen* (1994), 70 Ohio St.3d 399, 407, 412, 639 N.E.2d 67.

The Ohio General Assembly has not yet provided an Ohio-law cause of action for Ohio courts to process challenges to a lethal-injection protocol, and given the review available on this issue through Section 1983, Title 42, U.S.Code, for injunctive relief against appropriate officers or federal habeas corpus petitions, we need not judicially craft a separate method of review under Ohio law. Accordingly, until the General Assembly explicitly expands state review of death-penalty cases by creating a methodology for reviewing Ohio's lethal-injection protocol, we must answer the certified question as follows: There is no state postconviction relief or other state-law mode of action to litigate the issue of whether a specific lethal-injection protocol is constitutional under *Baze v. Rees*, 553 U.S. 35, 128 S.Ct. 1520, 170 L.Ed.2d 420, or under Ohio law.

*Scott*, 127 Ohio St. 3d at 318-319, ¶¶ 2-4.

Judge Adams' question was limited to challenges to a specific lethal injection protocol and not addressed to general claims that lethal injection execution is unconstitutional. Thus the Ohio Supreme Court's response should not be read as holding that such a general claim could not be raised in a criminal death penalty trial, on direct appeal, or in post-conviction proceedings under Ohio Revised Code § 2953.21, which specifically allows for consideration of constitutional claims, both Ohio and federal. In other words, *Scott* should not be read as narrowing the scope of any pre-existing Ohio procedures for raising a claim that all lethal injection executions are unconstitutional.

Instead, the Ohio Supreme Court seems to have thought they were being asked to create -- to "judicially craft" – a separate new method for review or at least to identify which existing Ohio procedure would be the proper one to use. The majority opinion does not discuss any

possible pre-existing avenues which are excluded. Chief Justice Brown in dissent suggested

declaratory judgment or mandamus as possible avenues and Justice Stratton's and Justice (now

Chief Justice) O'Connor's separate concurrences suggest these are not available, but the majority

does not comment on them either way. Justice Pfeiffer in dissent mentions the Ohio Supreme

Court's original jurisdiction to issue "the five great writs," but the majority does not respond to

that suggestion either.

Justice Stratton's majority opinion mentions "the review available on this issue through

Section 1983, Title 42, U. S. Code, for injunctive relief against appropriate officers" without

acknowledging that the state courts have concurrent jurisdiction over such actions and state

courts of general jurisdiction must hear such claims on the same basis as federal courts. *Howlett

v. Rose*, 496 U.S. 356 (1990). Thus the Lethal Injection Protocol Litigation plaintiffs, including

Gapen, could have brought that case in Common Pleas Court as well as in federal district court.

This Court declines to read *Scott* as in conflict with *Howlett*; any such conflict would implicate

the Supremacy Clause. *See Haywood v. Drown*, 556 U.S. ___, 129 S. Ct. 2108 (2009), *citing

Testa v. Katt*, 330 U.S. 386 (1947).

Gapen's counsel read *Scott* far more unambiguously than this Court, essentially reading

the majority opinion as saying a person in Gapen's position could not have raised his equal

protection claim on direct appeal or in post-conviction. Why not, when the court expressly held

"[t]here are several established methods for an Ohio death-penalty defendant to receive state

review of his or her case"?

Gapen argues that Chief Justice Brown's dissent "confirms that the Warden's

interpretation of *Scott's* holding is mistaken." (Memo in Opp., Doc. No. 152, PageID 4355.) The

referenced passage reads:

> Given the litany of laws governing the execution of human beings,
> it is unsurprising that there are, in fact, avenues in Ohio in which to
> raise such claims. Indeed, in this case, the federal court was faced
> with so many different options — venues that *had already been
> used or recommended* in Ohio, that it asked us to straighten them
> all out.
>
> As the federal court noted, challenges to the method of execution
> have been raised in different settings and at different stages and
> have met different fates. S*ee, e.g., State v. Scott*, 5th Dist. No.
> 2005CA00028, 2006 Ohio 257, P 59-60 (issue first raised in court
> of appeals in postconviction-relief proceeding; rejected as waived);
> *State v. Jackson*, 11th Dist. No. 2004-T-0089, 2006-Ohio-2651, P
> 149 (issue raised and rejected in trial court in postconviction;
> appellate court held that "a postconviction proceeding is not the
> proper legal context in which to litigate this issue; instead, this type
> of issue should be raised in a declaratory judgment or habeas
> corpus action"); *State v. Rivera*, 9th Dist. Nos. 08CA009426 and
> 08CA009427, 2009 Ohio 1428 (pretrial motion for dismissal of
> death-penalty specifications on ground that method of execution is
> unconstitutional granted by trial court; appeal by state dismissed as
> not involving final, appealable order); *Otte v. Strickland*, Franklin
> C.P. No. 08-CV-013337 (16 death-row inmates seek declaratory
> judgment in common pleas court; case is currently stayed).

*Scott*, 127 Ohio St. 3d at 328, ¶¶ 47-48.        Gapen continues:   "But, Chief Justice Brown

explained, the majority's holding now precludes any such review, whether under the Ohio

Constitution or the United States Constitution. *Id*."   (Memo in Opp., Doc. No. 152, PageID

4356.)   Having re-read these pages several times, the Magistrate Judge is unable to find any

place in the text where Chief Justice Brown made any such explanation, nor is it an inference

supported by this passage.   There is no suggestion anywhere in *Scott* that prior occasions of

raising a lethal injection claim on direct appeal or in post-conviction were or should have been

dismissed for want of jurisdiction.[2]

---

[2] Most of Chief Justice Brown's dissent is concerned with the lack of an Ohio forum to decide questions of **Ohio**
law, e.g., does a particular lethal injection protocol violate either Ohio statutory or constitutional limitations on a
lethal injection protocol.  It is understandable that he would be concerned about the lack of an Ohio forum for those

Gapen argues that, if the Warden is correct that lethal injection challenges can be litigated in state court, then this Court should stay this case to allow that return to state court (Memo. in Opp., Doc. No. 152, PageID 4358). As the Court understands it, the claim is not that Gapen **can** litigate those claims, it is that he **could have** but did not. The Warden certainly does not suggest that there is an available remedy, nor does Gapen suggest what remedy he would pursue if the Court did grant a stay. It seems likely that any attempt to file a successive post-conviction petition now would be found by the Ohio courts to be barred by *Scott v. Houk, supra.*

Upon this judge's reading, then, *Scott v. Houk* did not bar Petitioner from raising a general challenge to lethal injection executions in prior state court proceedings. Is Ground 25 then barred by Gapen's procedural default in not raising it in those proceedings? Gapen argues that it is not because it arose (and the Eighth Amendment claim required modification) as a result of Ohio's adoption of its current lethal injection protocol as of September 18, 2011, and obviously the claims could not have been raised before then. This judge and many others judges of this Court have now relied on that adoption date as meaningful in terms of allowing amendments, such as the amendment Gapen made, over the State's objection that they are barred by the statute of limitations (Decision and Order, Doc. No. 110).

While insisting on the importance of that date, Gapen's counsel continue to assert they are not challenging in this case the specific lethal injection protocol adopted on that date.

At the Court's request, Gapen's counsel explained at oral argument that Ground Twenty-Five depends on two of the three possible theories of equal protection violation: imposition of a burden on fundamental rights and a class-of-one theory, but not differences based on a suspect

questions because they could not be presented in federal court in either habeas or 1983. The general question whether Ohio law would allow a challenge in equity to other possible violations of the Ohio Constitution but not this one is beyond the scope of this Report.

class (Transcript, Doc. No. 164, PageID 4529-4530).  "So the crux of the argument is that the

State does not follow its own law in applying and administering an execution to [sic] an inmate;

and therefore, the inmates are receiving disparate treatment under the law."  *Id*.  at PageID 4530.

The law in question is Ohio Revised Code § 2949.22(A) and the extant lethal injection protocol.

*Id*.  at 4531.  The fundamental right being burdened, allegedly in violation of the Fourteenth

Amendment, is the Eighth Amendment right to be free from cruel and unusual punishment.  *Id*.

at 4531-4532.  The claim is not that there is a substantial risk of severe pain, but that there is

some risk of severe pain.  *Id*.  at 4532-4533.  There is also a risk "of denial of the procedural

safeguards that the Supreme Court has found are absolutely critical for Eighth Amendment

purposes, that the denial of those procedural safeguards in the form of the written policy is a

burden on the fundamental rights."  *Id*.  at 4533.

> Another fundamental right that I believe we cited was the First
> Amendment right to freedom of speech that we believe is being
> burdened by their unequal application of the law regarding the last
> words.  It's essentially just discretionary on whether the warden is
> going to allow the inmate to speak.

 *Id*.  at 4534.

> Third one can be that, you know, rights under the Ninth
> Amendment, Your Honor.  The line for that actually goes back to
> the Slaughter-House Cases [3] where the Court talked about, well,
> yeah, it's the Ninth Amendment and also the privileges and
> immunities clause. I'm getting things mixed up here.   The
> privileges and immunities clause was actually, I mean, we all know
> that the Slaughter-House case has essentially vitiated any
> functional import for the privileges and immunities clause but . . .
> interestingly one of the parts of the privileges and immunities
> clause that still explicitly remains viable in the Slaughter-House
> case itself was this fundamental right to individual, I'm blanking
> out with what the terms of art are, but forgive me, Your Honor, I'm

---

[3] 83 U.S. 36, 21 L. Ed. 394 (1873).

> mixing up privileges and immunities and the 14th Amendment and fundamental rights under the Ninth Amendment. The privileges and immunities goes to access to the courts. That's the fundamental right. . . . The Ninth Amendment arguments relate to just fundamental rights to bodily integrity and to things of that nature."

*Id.* at 4535.

Later in the argument, Gapen's counsel "circle[d] back" to the burdened fundamental rights question. *Id.* at 4549.

> So the specific due process rights, you know, the one that initially springs to mind is the due process that should be guaranteed by the statutory language in Ohio guaranteeing a quick and painless execution and the right to be able to expect a quick and painless execution.
>
> You know, so those have not been fully, completely fleshed out, but again, we're here on a motion to dismiss and so it's not, you know, that may be an issue for summary judgment or on down the line, but that's not necessarily the matter at hand as we would see it.

*Id.* at 4550.

To establish that all these claims arose after completion of the state court proceedings in this case, Gapen's counsel asserted that they were based on newly-discovered evidence obtained in the Ohio Lethal Injection Protocol Case in June, 2011, through January, 2012. *Id.* at 4546.

This judge has still not been led to an understanding of how a blanket equal protection attack on lethal injection executions can arise anew from state adoption of a new protocol for such executions. However, the Ohio Supreme Court has not yet had occasion to interpret what it wrote in *Scott v. Houk, supra*, in light of the interpretation being given to it in this and presumably many other capital cases by the Federal Public Defender. *See State v. Powell*, 132 Ohio St. 3d 233 (2012). Given those two limitations, it is premature to attempt to determine the procedural default defense at this point.

12

Accordingly, it is respectfully recommended that the Warden's Motion to Dismiss on the basis that Grounds Twenty-Four and Twenty-Five are not cognizable in habeas corpus be denied on the authority of *Adams v. Bradshaw, supra.* It is further recommended that the Warden's procedural default defense to Ground 25 be denied without prejudice as premature.

August 27, 2012.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).