# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

LARRY GAPEN,

        Petitioner,      :    Case No. 3:08-cv-280

  - vs -

                                    District Judge Walter Herbert Rice
                                    Magistrate Judge Michael R. Merz

DAVID BOBBY, Warden,

        Respondent.      :

## SUPPLEMENTAL OPINION ON PETITIONER'S MOTION FOR LEAVE TO FILE A THIRD AMENDED PETITION

      This capital habeas corpus case is before the Court on Petitioner Gapen's Objections (Doc. No. 170) to the Magistrate Judge's Decision and Order Granting in Part and Denying in Part Petitioner's Motion for Leave to File a Third Amended Petition (the "Decision and Order," Doc. No. 169). The Warden has filed a Response to the Objections (Doc. No. 172) and District Judge Rice has recommitted the matter for additional analysis.

      Petitioner's Motion for Leave to File a Third Amended Petition (Doc. No. 148) sought to add six new grounds for relief. The Magistrate Judge granted[1] the Motion as to five of those grounds (Grounds 26, 27, 28, 28, and 30), but denied the Motion as to Ground 31. The Warden filed no objections as to adding Grounds 26, 27, 28, 29, and 30 (although he had opposed the Motion as to those Grounds), so that leave to file as to those five Grounds is final, as noted by Judge Rice in the Recommittal Order (Doc. No. 171, PageID 4697).

---

[1] A motion to amend under Fed. R. Civ. P. 15 is a nondispositive pretrial motion on which a Magistrate Judge may enter a ruling, as opposed to recommending a disposition.

1

Gapen's present Objections concern only his proposed thirty-first Ground for Relief:

> **Thirty-First Ground for Relief**: Gapen's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution were violated when the jurors violated the trial court's instructions regarding the handling of physical evidence during deliberations.
>
> 606. Gapen's constitutional rights were violated when the jurors violated the trial court's instructions relating to physical evidence.
>
> 607. The trial court instructed the jury to not open, during their deliberations, several containers or bags in which several items of bloody, inflammatory evidence were sealed.
>
> 608. Prior to guilt phase deliberations, the trial court gave the jury the following instruction:
>
>> THE COURT: One admonition which I almost overlooked, and I'm glad that it was mentioned to me. There are several bags here that are marked biohazard. The ones that you are permitted to open are on the top. All the ones you are not permitted to open with biohazard on them are in the bottom rack of this thing, (cart) If you do see a bag, and it says you may open, you may do so, if you wish to do so as part of it. You have seen all these exhibits and know what they are presumably, but to look at them, you may. The ones in the biohazard bags that are marked "do not open" are there. They are numbered so that if you can recall the numbers and the like, that information will be available to you for consideration, but you are not to open those bags. The other ones, even though they are marked biohazard, you may open them if you wish. I would recommend rubber gloves. Rubber gloves will be supplied for you in the jury room. Thank you. (ROW Apx. Vol. 17 at 3873-74.)
>
> 609. Many of the items of evidence were never opened or removed from their sealed containers during the trial or presented in open court in any form other than as they appeared in sealed bags or containers. (*See, e.g.,* ROW Tr. Vol. 12, 2823-40, 2921.)
>
> 610. The record clearly indicates that the jurors nevertheless opened some of the bags that were supposed to stay sealed,

removed the evidence inside, and examined it. (*See* ROW Tr. Vol. 15 at 3470-80 and compare with Exhibit D, Flournoy Deposition II, May 31, 2012, p. 29-31, 33-38, 43.)

611. "'[O]ur system of trial by jury is premised on the assumption that jurors will scrupulously follow the court's instruction[.]'" *United States v. Riccio,* 529 F.3d 40, 45-46 (1st Cir. 2008) (quoting *United States v. Owens*, 167 F.3d 739 (1st Cir. 1999)). Gapen had a constitutional due process right to be tried by a panel of jurors who would follow the court's instructions, and his rights were violated when the jurors failed to do so.

612. Also, the jury's actions changed the essential nature of the evidence from that which was presented at trial to that which the jury considered. Evidence that appeared before the jury only as sealed in plastic bags took on a dramatically different character when removed from a sealed container and handled in the jury room.

613. The jury's consideration of this changed evidence after it failed to follow the trial court's instructions violated Gapen's rights under the Federal Constitution, including the Fifth, Sixth, Eighth and Fourteenth Amendments.

614. "[A]mong the protections that the Sixth Amendment provides is the right to an impartial jury that arrives at a verdict based upon the evidence developed at trial." *Fullwood v. Lee*, 290 F.3d 663, 682 (4th Cir. 2002) (citation and internal quotation marks omitted). The Sixth Amendment prohibits the jury from considering "extraneous prejudicial information." *Id.* (citations omitted). The Eighth Amendment and due process likewise prohibit the jury from considering inadmissible evidence in its capital sentencing calculus.

615. The Supreme Court has long held that "the evidence developed against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel." *Parker v. Gladden*, 385 U.S. 363, 364-65 (1966) (per curiam) (internal quotation marks omitted); see also *Crawford v. Washington*, 541 U.S. 36, 68 (2004); *Turner v. Louisiana*, 379 U.S. 466, 472-73 (1965); *Doan v. Brigano,* 237 F.3d 722, 733 n.7 (6th Cir. 2001), overruled on other grounds by *Wiggins v. Smith*, 539 U.S. 510 (2003); *Gall v. Parker*, 231 F.3d 265, 334 (6th Cir. 2000).

616. The Supreme Court has also long held that a defendant such as Gapen has a right to the presence of counsel during critical stages of trial, including the jury's receipt of evidence. *See, e.g.*, *United States v. Cronic,* 466 U.S. 648, 659-60 & nn. 25-26 (1984), *Holloway v. Arkansas,* 435 U.S. 475, 489 (1978); *Penson v. Ohio*, 488 U.S. 75, 88-89 (1988); *Van v. Jones*, 475 F.3d 292, 312 (6th Cir. 2007).

617. The Supreme Court has also long held that a defendant such as Gapen has a right to a verdict and sentence that is based solely on the evidence presented at trial and the court's instructions as to the applicable law. *Turner v. Louisiana,* 379 U.S. 466, 472-73 (1965); *see also Sheppard v. Maxwell*, 384 U.S. 333, 351 (1966) (counting among essential legal procedures "the requirement that the jury's verdict be based on evidence received in open court, not from outside sources"); *Irvin v. Dowd,* 366 U.S. 717, 722 (1961) (stating that a juror's verdict "must be based upon the evidence developed at the trial").

618. The Supreme Court has also long held that a defendant such as Gapen has a right to a fair, impartial, and unbiased jury that considers his case solely on the evidence presented in open court subjected to the procedural protections that are constitutionally required, and a right to a jury that is free from extraneous influences such as "private communication, contact, or tampering" in its deliberations. *Remmer v. United States*, 347 U.S. 227, 229 (1954); *Turner*, 379 U.S. at 472-73; *Irvin v. Dowd*, 366 U.S. 717, 721-22 (1961); *Mattox v. United States*, 146 U.S. 140, 149 (1892); *Parker*, 385 U.S. at 364; *see also Gardner v. Florida*, 430 U.S. 349, 362 (1977); *Doan v. Brigano*, 237 F.3d 722, 733 n.7 (6th Cir. 2001) ("As a matter of law, clearly established Supreme Court precedent requires that a criminal defendant be afforded the right . . . to a jury that considers only the evidence presented at trial." (citing *Turner*, 379 U.S. at 472-73)); *Gall v. Parker*, 231 F.3d 265, 334 (6th Cir. 2000) (citations omitted).

619. The Supreme Court has also long held that a defendant such as Gapen has the right to have his capital jury give full, meaningful consideration to all relevant mitigating evidence in determining the sentencing verdict. *See, e.g.,* *Abdul-Kabir v. Quarterman*, 550 U.S. 233, 246 (2007), *Penry v. Lynaugh*, 492 U.S. 302, 321 (1989) ("*Penry* I"), *Hitchcock v. Dugger*, 481 U.S. 393, 398–99 (1987), *Skipper v. South Carolina*, 476 U.S. 1, 4 (1986), *Eddings v. Oklahoma*, 455 U.S. 104 (1982), and *Lockett v. Ohio,* 438 U.S. 586, 604 (1978).

4

620. Similarly, the Supreme Court has long held that a defendant such as Gapen has the right to have his capital jury give full, meaningful effect to all relevant mitigating evidence in determining the sentencing verdict. *See, e.g., Abdul-Kabir v. Quarterman,* 550 U.S. 233, 246 (2007), *Penry v. Lynaugh,* 492 U.S. 302, 321 (1989) ("*Penry* I"), *Hitchcock v. Dugger*, 481 U.S. 393, 398–99 (1987), *Skipper v. South Carolina,* 476 U.S. 1, 4 (1986), *Eddings v. Oklahoma*, 455 U.S. 104 (1982), and *Lockett v. Ohio*, 438 U.S. 586, 604 (1978).

621. The Supreme Court has also long held that a fundamentally fair trial is also guaranteed by a due process right that is separate and distinct from these other rights outlined above. *Morgan v. Illinois*, 504 U.S. 719, 727 (1992) ("[D]ue process alone has long demanded that, if a jury is to be provided the defendant . . . the jury must stand impartial and indifferent to the extent commanded by the Sixth Amendment.") (emphasis added); *Smith v. Phillips*, 455 U.S. 209, 217 (1982) ("Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." ); *Gardner v. Florida*, 430 U.S. 349, 362 (1977) (finding a due process violation when a "death sentence was imposed, at least in part, on the basis of information which [a defendant] had no opportunity to deny or explain."); *Sheppard*, 384 U.S. at 351; *Turner*, 379 U.S. at 472 ("The requirement that a jury's verdict 'must be based upon the evidence developed at the trial' goes to the fundamental integrity of all that is embraced in the constitutional concept of trial by jury."); *Irvin*, 366 U.S. at 721-22; *In re Murchison*, 349 U.S. 133, 136 (1955) ("A fair trial in a fair tribunal is a basic requirement of due process."); *Gall v. Parker,* 231 F.3d 265, 334 (6th Cir. 2000).

622. Each and all of these constitutional rights were violated when the jury dramatically changed the nature of the evidence when Forewoman Flournoy removed bloody items of evidence from sealed containers as they were presented in open court. And the jury proceeded to examine, handle, and consider the now-changed evidence in their deliberations during both phases of Gapen's trial, in violation of Gapen's constitutional rights.

623. All of this altered evidence constituted extraneous prejudicial information that was considered by the jurors at Gapen's trial. The evidence was considered during a critical stage of a criminal proceeding, was received by the jury without the opportunity for cross-examination or confrontation and with a complete absence of

5

counsel. The scope and nature of the altered evidence was also such that it meant the jury was unable to give full, meaningful effect to all of Gapen's relevant mitigating evidence.[13] Due process was violated by the jury's receipt and consideration of the altered evidence.

> [13] The term "altered" evidence is being used to describe the items that were opened and unsealed contrary to the trial court order and therefore improperly considered, and so as not to be confused with the term unadmitted evidence ( e.g. the gun receipt, envelope with teeth) that is used in discussion with respect to other claims.

624. The jury's failure to follow the court's instructions also violated Gapen's constitutional rights because it denied him and his counsel the ability to address whatever theories and inferences could be drawn from the opened, unsealed bloody evidence, contrary to the Sixth Amendment right to be notified of the evidence against him.

625. The facts, theories and inferences that could be drawn from the evidence as it appeared sealed in plastic bags or containers, presented in open court with all the attendant procedural protections including the presence of counsel and the opportunity to examine the evidence, were dramatically different than the facts, theories and inferences that could be drawn from the evidence when it was opened, removed from the containers and considered in the jury room.

626. A trial cannot be fair unless the nature of the charges and evidence against a defendant are adequately made known to him or her in a timely fashion, and the jury's actions here violated those rights. *See Strickland v. Washington*, 466 U.S. 668, 685 (1984) (a fair trial is "one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding") (emphasis added); *see also Cole v. Arkansas*, 333 U.S. 196 (1948); *see also Gray v. Raines*, 662 F.2d 569, 571 (9th Cir. 1981) ("A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense -- a right to his day in court -- are basic in our system of jurisprudence. . . ." (quoting *In re Oliver*, 333 U.S. 257, 273 (1948))).

627. The jury's actions also directly implicated Gapen's right to counsel. Gapen's counsel could not prepare or develop a proper

> defense to the theories and inferences that arose with the opened evidence when counsel was working with the understanding that the evidence would only be presented to and considered by the jury as it appeared in open court.
>
> 628. The right to counsel "is meaningless unless counsel knows and has a satisfactory opportunity to respond" to the charges and evidence against which he or she must defend. *See Sheppard v. Rees,* 909 F.2d 1234, 1237 (9th Cir. 1990); *see also Strickland*, 466 U.S. at 685.
>
> 629. Gapen's counsel had no occasion to defend against the evidence in the nature and character that it appeared as removed from sealed containers and displayed in the jury room. This denied Gapen's right to effective assistance of counsel guaranteed by the Sixth Amendment.

(Proposed Third Amended Petition, Doc. No. 148-1, PageID 4302-4308.)

The asserted factual basis of this claim is that the jurors opened containers of physical evidence during deliberations which they had been instructed by the trial judge not to open. This is asserted to entitle him to habeas corpus relief because he had a due process right to be tried by jurors who followed instructions and opening the containers "changed the essential nature of the evidence from that which was presented at trial. . . ." (Proposed Third Amended Petition, Doc. No. 148-1, PageID 4303-4304).

The Magistrate Judge denied the Motion as to Ground Thirty-One, holding:

> Proposed Ground for Relief Thirty-One does not state a claim upon which habeas corpus relief can be granted. There are thirty-six citations to United States Supreme Court decisions in the Thirty-First Ground for Relief. None of them stand for the proposition that a criminal defendant's constitutional rights are violated when jurors examine actual physical evidence instead of the tagged containers in which that evidence has been preserved. The Magistrate Judge is unaware of any system of metaphysics in which the "essential nature" of something is changed by taking it out of a package.

7

> It is of course true that by handling the physical exhibits, jurors may have deposited their own DNA, thereby possibly confounding any post-trial DNA testing. But that is irrelevant to any claim made by Gapen; the purpose of chain of custody requirements is to preserve evidence **for** the jury, not **from** the jury.
>
> Gapen is of course correct that he was entitled to jurors who followed instructions and Judge Petzold's instructions were violated here. Ms. Flournoy testified at her deposition that she opened some of the packages which were supposed to stay closed. But it is evident from Judge Petzold's instruction that his purpose was to contain the biohazards presented by bloody evidence, not to prevent jurors from appreciating the actual physical evidence recovered and admitted into evidence. [footnote omitted.] To the extent Gapen's argument is that the actual bloody evidence would weigh more heavily with jurors, he may well be right, but that also is immaterial. A defendant who spills large amounts of blood is not constitutionally entitled to have the weight of that facts lessened by having jurors view the blood "through a glass, darkly."

(Decision and Order, Doc. No. 169, PageID 4686-4687.)

Gapen objects that this part of the Decision is "clearly erroneous and contrary to law, and should therefore be set aside under 28 U.S.C. § 636(b)(1)(A)." (Objections, Doc. No. 170, PageID 4689, 4691, 4692.) The Decision and Order does not make or rely on any factual findings, so the "clearly erroneous" standard of review does not apply. Instead, the District Court should apply the less deferential "contrary to law" standard and review the Decision and Order *de novo*.

The standard of review on nondispositive matters is clearly erroneous as to factual findings or contrary to law as to legal conclusions. *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001), *citing United States v. Raddatz*, 447 U.S. 667, 673 (1980). To demonstrate that a conclusion is contrary to law, a party must show the conclusion "contradict[s] or ignore[s] applicable precepts of law, as found in the Constitution, statutes, or case precedent." *Auto Chem Laboratories, Inc., v. Turtle Wax, Inc.*, 2009 U.S. Dist. LEXIS 86126 *6 (S.D. Ohio Sept. 21,

8

2009)(Rice, J.), *citing Gandee v. Glaser*, 785 F. Supp. 684, 686 (S.D. Ohio 1992)(Kinneary, J.), aff'd 19 F.3d 1432 (6th Cir. 1994), *quoting Adolph Coors Co. v. Wallace*, 570 F. Supp. 202, 205 (N.D. Cal. 1983).

Under 28 U.S.C. § 2242, a habeas corpus petition may be amended "as provided in the rules of civil procedure applicable to civil actions." The Decision and Order cites this statute and then the standard under Fed. R. Civ. P. 15 as enunciated in *Foman v. Davis,* 371 U.S. 178 (1962) (Decision and Order, Doc. No. 169, PageID 4675). Gapen does not suggest there was any error of law in choosing *Foman* as the governing standard.

Instead, Gapen argues adding Ground Thirty-One would not be futile because, although it is unexhausted, it "cannot be said that the claim cannot lead to habeas relief." (Objections, Doc. No. 170, PageID 4692, *citing Mansion v. Clark,* No. CV 09-1494, 2012 WL 2577476 at *3 (C.D. Cal. Jun. 17, 2012)).

To show that Ground Thirty-One could lead to habeas relief, Gapen makes two arguments.

**1. Jurors Not Following Instructions**

Gapen first contends that he has new evidence that the jurors did not follow Judge Petzold instructions scrupulously. That is true: In her deposition taken in open court, Juror Flournoy admitted opening containers of evidence during deliberations which she and the other jurors were instructed not to open.

As authority that this act by a juror could lead to habeas relief, Gapen cites one case, *United States v. Riccio*, 529 F.3d 40, 45-46 (1st Cir. 2008)(quoting *United States v. Owens*, 167 F.3d 739 (1st Cir. 1999)).

Before examining that precedent, the Magistrate Judge notes that in the Decision and

Order he stated that Proposed Ground Thirty-One contained citations to thirty-six United States Supreme Court decisions, not one of which "stand[s] for the proposition that a criminal defendant's constitutional rights are violated when jurors examine actual physical evidence instead of the tagged containers in which that evidence was preserved." (Decision and Order, Doc. No. 179, PageID 4686.)  If that is one of the Magistrate Judge's conclusions which is contrary to law, one would expect Gapen to point to the applicable Supreme Court precedent. He has not.

Instead, he has directed the Court to one published opinion of the First Circuit.  That case, *Riccio, supra,* did not involve any alleged failure of the jury to follow instructions.  Rather, the claim on appeal was that the instructions were erroneous.  The language quoted by the *Riccio* court from *Owens* is pure dictum, not argued by the parties and not necessary to the decision in *Riccio. See Owens,* 167 F.3d at 756. *Owens* itself involved a claim of error in the jury instructions, and not in the failure to jurors to follow them.

In sum, Gapen has cited not a single case in which any court has held that any of a criminal defendant's constitutional rights are violated when jurors open sealed evidence packages contrary to the judge's instructions.

To prevail on this claim, Gapen must show that the jury's acts violated the Constitution. If the amendment is permitted and he then exhausts the claim in state court, he will have to show that the state court adjudication of the claim was contrary to or an objectively unreasonable application of clearly established Supreme Court precedent as of the time of trial.  If there is any law that supports that conclusion, it is not cited in either the Motion or the Objections.

### 2. Changing the "Essential Nature" of the Evidence

Gapen's second argument as to how his Thirty-First Ground could "lead to habeas relief" is that "the jurors' conduct arguably changed the essential nature of the evidence. . . ." (Objections, Doc. No. 170, PageID 4692.)

The Decision and Order states "[t]he Magistrate Judge is unaware of any system of metaphysics in which the 'essential nature' of something is changed by taking it out of a package." (Decision and Order, Doc. No. 169, PageID 4686-4687.)  All that Gapen says in his Objections in response is that that proposition is "arguable."  However, he makes no such argument.  Moreover, he cites no legal authority at all in support of this proposition.  It remains true that the trial exhibits are the contents of the evidence containers and not the containers themselves.

In sum, Gapen has not shown that his Thirty-First Ground for Relief is cognizable in habeas at all.  It is therefore respectfully recommended that his Objections be overruled.

**Applicability of Fed. R. Civ. P. 11 in Habeas Corpus**

Rule 12 of the Rules Governing § 2254 Cases provides that "[t]he Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules."  Fed. R. Civ. P. 11, which is in no way inconsistent with any statute or the Habeas Rules, provides in pertinent part:

> (b) By presenting to the court (whether by signing, filing,

>submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
>>(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>>
>>(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>>
>>(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>>
>>(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Far too much needless delay occurs in capital habeas corpus litigation.

>In capital cases, as recent studies have shown, habeas litigation too often drags on for years, even decades. One important reason is that, unlike most noncapital prisoners seeking release from custody, most death row inmates have no inherent incentive to try to speed up the pace of habeas litigation. Delay is almost always preferable to the alternative, which is timely enforcement of the death sentence.

King and Hoffman, Habeas for the Twenty-First Century: Uses, Abuses, and the Future of the Great Writ at 150 (2011).[2] Rule 11 provides the district courts with a tool with which to combat needless delay. When delay is occasioned by argument which is not even made, much less "nonfrivolous," as is the case with Gapen's "essential change" argument, the Court may well suspect that delay is the motivation. Sanctions are appropriate when "an attorney . . .

---

[2] (Based on King, Cheesman, and Ostrom, Final Technical Report: Habeas Litigation in U.S. District Courts (2007)(available at http://www.ncjrs.gov/pdffiles/nij/grants/219559.pdf.)

intentionally abuses the judicial process or knowingly disregards the risk that his actions will needlessly multiply proceedings." *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006).  A district court may impose a Rule 11 sanction on an attorney and prohibit reimbursement from any source.  *Derechin v. State University of New York*, 963 F.2d 513, 519 (2nd Cir. 1992).

While vigorous advocacy is expected in capital litigation, counsel are cautioned that the Court considers Rule 11 fully applicable to these proceedings.

January 8, 2013.

s/ *Michael R. Merz*
United States Magistrate Judge
