# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

LARRY GAPEN,

              Petitioner,      :      Case No. 3:08-cv-280

  - vs -

                                     District Judge Walter Herbert Rice
                                     Magistrate Judge Michael R. Merz

DAVID BOBBY, Warden,

              Respondent.     :

## SUPPLEMENTAL MEMORANDUM OPINION ON DENIAL OF MOTION TO AMEND

This capital habeas corpus case is before the Court on Petitioner's Motion for Leave to File an Amended Petition to Address Newly Ripe Claims under *Hurst v. Florida*, 577 U.S. ___, 136 S. Ct. 616 (2016) (ECF No. 214). The Magistrate Judge denied the Motion (Decision, ECF No. 218), Petitioner objected (Objections, ECF No. 221), and Judge Rice has committed the matter for additional analysis (ECF No. 223).

The Decision held that a motion to amend a habeas petition is a pretrial non-dispositive motion which Magistrate Judges are authorized to decide in the first instance (ECF No. 218 at PageID 18615, citing 28 U.S.C. § 636(b)(1)(A) and *Monroe v. Houk*, No. 2:07-cv-258, 2016 U.S. Dist. LEXIS 38999 (S.D. Ohio, Mar. 23, 2016)(Sargus, C.J.)). The Objections do not disagree, but argue the correct standard of review on the pure question of law of the application of *Hurst* to Ohio is *de novo*. (ECF No. 221, citing *Gander v. Glaser,* 785 F. Supp 684 (S.D. Ohio 1992)(Kinneary, J.), aff'd., 19 F.3d 1432 (6th Cir. 1994)(Table)). The Magistrate Judge

1

agrees.

The Magistrate Judge and Petitioner likewise agree that the key Fed. R. Civ. P. 15 factor on the instant request to amend is whether the amendment would be futile. The Decision holds that an amended petition containing a *Hurst* claim would be subject to dismissal under Fed. R. Civ. P. 12(b)(6) and would therefore be futile. The Decision also holds that *Hurst* does not apply retroactively to cases pending on collateral review such as Mr. Gapen's. Petitioner objects to both of these conclusions.

**Applicability of *Hurst* to the Ohio Capital Sentencing Scheme**

In *Hurst* the United States Supreme Court applied the *Apprendi* line of cases, particularly *Ring v. Arizona,* 536 U.S. 584 (2002), to Florida's capital sentencing scheme. The Court found, "Like Arizona at the time of *Ring*, Florida does not require the jury to make the critical findings necessary to impose the death penalty. Rather, Florida requires a judge to find these facts." 136 S. Ct. at 621.

The Decision concluded *Hurst* is correctly read as holding that "the relative weight of aggravating circumstances and mitigating factors is question of fact akin to an element under the *Apprendi* line of cases, that is, a fact necessary to be found [by the jury] before a particular punishment can be imposed . . . ," (ECF No. 218, PageID 18619). The Decision found Ohio's death penalty scheme to be "materially different" from Florida's in that it "required that, before a sentence of death could be imposed, the jury must find, beyond a reasonable doubt, that the aggravating circumstances outweighed the mitigating factors." *Id.* at PageID 18619-20.

The Decision noted that Ohio trial judges must also find the aggravating circumstances

outweigh the mitigating factors independently of the jury, "[b]ut that weighing is, so to speak, on top of the jury's weighing: if the jury does not find the aggravating circumstances outweigh the mitigating factors, the judge cannot overruled that finding." *Id.* at PageID 18620.

**"Remarkably Similar" but "Materially Different"**

Gapen's principal objection is that "[t]he Magistrate Judge's analysis gives short shrift to the conclusions of Ohio courts, which have repeatedly found that Ohio's capital sentencing scheme parallels Florida's in all critical respects." (Objections, ECF No. 221, PageID 18633.) With that lead, one might expect a string citation of Ohio cases purportedly in point. In fact, the first Ohio citation is three pages later to *State v. Rogers*, 28 Ohio St. 3d 427 (1986).[1]

*Rogers* was before the Ohio court on remand from the United States Supreme Court for review in light of *Caldwell v. Mississippi,* 472 U.S. 320 (1985). In *Caldwell* the Supreme Court reversed a death sentence for prosecutorial misconduct in leading the jury to discount its responsibility for a death sentence by saying whatever the jurors did would be reviewed by an appellate court. *Rogers* also involved a prosecutorial misconduct claim. The Ohio Supreme Court distinguished Ohio's capital sentencing scheme from the Mississippi scheme at issue in *Caldwell*:

> At the outset of the within analysis, it should be stated that Ohio's statutory framework for the imposition of the death penalty is altogether different from that of Mississippi, most importantly in that Ohio has no "sentencing jury." All power to impose the punishment of death resides in the trial court which oversees the mitigation or penalty phase of the trial. . . .

---

[1] Note that *Rogers* was decided fourteen years before *Apprendi* and sixteen years before *Ring*. *Apprendi* was largely unanticipated by the habeas corpus bar.

> Immediately obvious is that, under this provision, the jury provides only a *recommendation* as to the imposition of the death penalty. The trial court must thereafter independently re-weigh the aggravating circumstances against the mitigating factors and issue a formal opinion stating its specific findings, before it may impose the death penalty. R.C. 2929.03(F). It is the trial court, not the jury, which performs the function of sentencing authority. Thus, no "sentencing jury" was involved in the proceedings below. Furthermore, as actual sentencer, the trial court was "present to hear the evidence and arguments and see the witnesses" and was in a position to fully appreciate a plea for mercy. Caldwell, supra, at 331.
>
> Furthermore, Ohio's sentencing procedures are not unique both because a separate sentencing hearing is utilized, and because capital sentencing authority is invested in the trial judge. See, *e.g.,* Ala. Code Subsection 13A-5-47 (1986 Supp.) (judge is not bound by jury's advisory verdict); Ariz. Rev. Stat. Annot. Section 13-703(B), (C) and (D) (1986 Supp.) (jury is completely excluded from sentencing); Colo. Rev. Stat. Section 16-11-103 (2)(C) (1985 Supp.) (trial judge may vacate a jury finding if clearly erroneous); Fla. Stat. Section 921.141(2) (1982 Cum. Supp.) (trial court independently re-weighs aggravating versus mitigating circumstances after an advisory jury verdict); Idaho Code Section 19-2515(d) (1986 Supp.) (trial court alone sentences and conducts a mitigation hearing), etc.
>
> Florida's statutory system, which is **remarkably similar** to Ohio's, was expressly upheld in the case of Spaziano v. Florida (1984), 468 U.S. 447.

28 Ohio St. 3d at 429-30 (second emphasis supplied)(parallel citations omitted).

Gapen also cites *State v. Davis,* 139 Ohio St. 3d 122 (2014). There the Ohio Supreme Court held that a capital defendant could not withdraw a jury waiver that had been properly accepted. It is unclear what relevance Gapen believes *Davis* has to his *Hurst* claim; the *Davis* court did not repeat the "remarkably similar" comparison used by Justice Holmes in *Rogers*.

Thus, for the cited proposition that Ohio courts have "repeatedly" found Ohio's system is like Florida's "in all critical respects," Gapen has one citation, *Rogers*.

*Rogers*, of course, is not in point because the Ohio Supreme Court was not considering

the question presented here, to wit, whether the fact that Ohio's statutes require a jury finding that the aggravated circumstances outweigh the mitigating factors sufficiently distinguishes it from Florida's statutes which did not have that requirement when *Hurst* was decided. In *Rogers* the Ohio Supreme Court was deciding whether the Ohio system where only a judge can impose a capital sentence, was sufficiently different from Mississippi's where the jury could impose a death sentence and had been, in Caldwell's case, misled about its duty by the prosecutor. Indeed, the "remarkably similar" language from *Rogers* is dictum and not even dictum on the points at issue here.

Counsel's use of the "remarkably similar" dictum in this and many other capital cases in this Court in which *Hurst* claims were proposed in January 2017 is itself a remarkable bit of "proof texting." The technique involves ripping language out of context and using it to prove a proposition not intended by the author. It has, for example, been grossly misused to argue that capital punishment for murder is divinely commanded by Genesis 9:6.[2] Advocates who rely on proof-texting should recall another biblical admonition: "All who take the sword shall perish by the sword." Matthew 26:52 (NRSV translation).

Ohio's capital sentencing scheme meets the requirements of *Apprendi* and *Ring*: before an Ohio judge can impose a death sentence, the jury must (1) have found in the culpability phase of the trial the existence of one or more aggravating circumstances beyond a reasonable doubt, and (2) found in the sentencing phase of the trial that the aggravating circumstances proved to them outweigh the mitigating factors beyond a reasonable doubt.

It is certainly true that even after the trial jury makes the required finding, the trial judge must perform many more steps. He or she must independently decide that the aggravating circumstances outweigh the mitigating factors. In Ohio that same reweighing must also be done

---

[2] "Whoever sheds the blood of a human, by a human shall that person's blood be shed." (NRSV translation).

by the Ohio Supreme Court.

The logic of Mr. Gapen's position is that everything necessary for the imposition of a capital sentence must be done by the jury. But *Apprendi* and *Ring* do not go that far. For example, outside the capital context, a state trial judge may, upon conviction on multiple counts, impose concurrent or consecutive sentences, but no jury finding is needed. *Oregon v. Ice*, 555 U.S. 160 (2009). In federal sentencing a District Judge must make findings under the Sentencing Guidelines before imposing sentence, but the Supreme Court has never held those findings must be made by a jury instead.

Ohio's capital sentencing scheme is materially different from Florida's on precisely the point on which *Hurst* was decided. Therefore Gapen's adding a *Hurst* claim to his habeas petition would be futile.

**Retroactivity**

The Decision also held the proposed amendment would be futile because *Hurst* would not apply retroactively, i.e., to cases pending on collateral review (ECF No. 218, PageID 18621-22, relying principally on *Teague v. Lane*, 489 U.S. 288 (1989)).

Gapen objects that this conclusion is "overstate[d]." (Objections, ECF No. 221, PageID 18638). He argues that

> Multiple state courts have applied the case retroactively to cases on collateral review, however. *See State v. Kirkland*, 49 N.E. 3d 318 (Table) (Ohio 2016); *see also Mosley v. State*, No. SC14-2208, 2016 WL 7406506, at *19 (Fla. Dec. 22, 2016); *Powell v. State*, No. 310, 2016, 2016 WL 7243546, at *4 (Del. Dec. 15, 2016) (per curiam).

6

*Id.* The Florida Supreme Court based its decision in *Mosley* on Florida retroactivity doctrine; the same is true of the Delaware Supreme Court's decision in *Powell*. Gapen also cites *State v. Kirkland*, 145 Ohio St. 3d 1455 (2016), but *Kirkland* was decided without any opinion.

Gapen argues that even if *Hurst* is not "fully retroactive under federal court precedent," allowing the amendment would allow him to litigate his *Hurst* claim in the Ohio courts and "the state courts might reach a different conclusion with respect to retroactivity." (Objections, ECF No. 221, PageID 18638). But Gapen cites no Ohio case finding any United States Supreme Court decision retroactively applicable to a case on collateral review under Ohio law. Thus he has not offered support for the findings required by *Rhines v. Weber*, 544 U.S. 269, 277-278 (2005), to expand his stay of these proceedings to include exhaustion of a *Hurst* claim in the Ohio courts.

**Conclusion**

Having reconsidered the matter in light of the Objections, the Magistrate Judge again concludes the proposed amendment would be futile and respectfully recommends the District Court overruled the objections.

April 20, 2017.

s/ *Michael R. Merz*
United States Magistrate Judge

7